UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**LUIS CUAHAUTHEMOC GRANADOS, JR.**,

                      Plaintiff,

v.                                                 Case No. 15-cv-1106-pp

**CO RASMUSSEN,
CO UMENTUM,
SGT. SCHALK,
LT. SABISH,
GREFF,
DR. HALPER, and
UNKNOWN, Training Captain,**

                      Defendants.

---

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION
FOR LEAVE TO PROCEED IN FORMA PAUPERIS (DKT. NO. 2), DENYING
WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL
(DKT. NO. 8) AND SCREENING THE PLAINTIFF'S COMPLAINT**

---

The plaintiff, a state prisoner, filed a *pro se* complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights at Waupun Correctional Institution. This order resolves the plaintiff's motion for leave to proceed *in forma pauperis* and the plaintiff's motion to appoint counsel, and screens the plaintiff's complaint.

    **I.**    ***IN FORMA PAUPERIS* STATUS**

The Prison Litigation Reform Act applies to this action because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case-filing fee, as long as he meets

1

certain conditions. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On September 10, 2015, the court issued an order requiring the plaintiff to pay an initial partial filing fee of $0.10. Dkt. No. 6. The court received the initial partial filing fee on October 1, 2015. The court will grant the plaintiff's motion for leave to proceed *in forma pauperis*, and will allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II.     SCREENING OF PLAINTIFF'S AMENDED COMPLAINT

### A.     Standard for Screening Complaints

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss part or all of a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of

2

what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of

3

N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

    B.    Facts Alleged in the Proposed Complaint

On March 13, 2015, the plaintiff was housed in the segregation unit at Waupun Correctional Institution. Dkt. No. 1 at 3. He informed staff that he felt suicidal, and Dr. Olson evaluated the plaintiff. Id. The plaintiff then was escorted to the strip cage to be placed in observation status. Id.

Defendant Correctional Officer Rasmussen approached the plaintiff and ordered him to hand out his green gown in exchange for a paper gown. Id. The plaintiff asked if he was being strip searched, and Rasmussen replied, "No, I'm not feeling it today, just give me your gown and put this on." Id.

Defendants Rasmussen, Umentum, Sabish and Schalk escorted the plaintiff to the cell and placed him on observation. Id. Moments later, the plaintiff noticed that he still had his rosary around his neck and half a comb in his hair. Id. at 3-4. He instantly used both items to cut his inner left elbow. Id. at 4. He made a three-inch cut that caused severe scar tissue and is very noticeable. Id. The plaintiff indicated that he gets emotional and feels hurt when he looks at the scar. Id. Dr. Halper approached the plaintiff's door to witness the injury and the objects the plaintiff used. Id.

4

According to the plaintiff, Rasmussen failed to protect the plaintiff by not strip-searching him before placing him in observation, even though Rasmussen knew the plaintiff has a history of self-harm. Id. The plaintiff also submits that the defendants were deliberately indifferent to his medical need for observation status to keep him from harming himself. Id. The plaintiff seeks injunctive relief and damages. Id. at 5.

C.  Legal Analysis of Alleged Facts

An Eighth Amendment claim for failure to protect an inmate from violence has two elements: first, that the inmate was incarcerated under conditions posing a "substantial risk of serious harm," and second, that a prison official displayed "deliberate indifference" to that risk. Farmer v. Brennan, 511 U.S. 825, 834 (1991). A prison official displays deliberate indifferent to an inmate's safety when the official "knows of and disregards an excessive risk" to the inmate's safety." Id. at 837.

The plaintiff alleges that defendant Rasmussen knew that the plaintiff was a risk to himself, and that defendants Rasmussen, Umentum, Schalk, Sabish and Halper did not prevent the plaintiff from harming himself while he was in observation. The allegations in the complaint imply that defendants Rasmussen, Umentum, Schalk and Sabish did not make sure that all contraband was taken away from the plaintiff, and that Dr. Halper watched the plaintiff injuring himself. The court finds that the plaintiff has stated sufficient facts to allow him to proceed on an Eighth Amendment claim that the defendants failed to protect him from violence.

5

Similarly, prison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs. Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011) (citing Estelle, 429 U.S. at 104). A claim based on deficient medical care must demonstrate two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition. Arnett, 658 F.3d at 750 (citing Johnson v. Snyder, 444 F.3d 579, 584 [7th Cir. 2006]). To the extent the plaintiff's thoughts of self-harm constitute a serious medical need, if the defendants were aware of those thoughts, they would have been deliberately indifferent in placing the plaintiff in observation status with items he could use to injure himself. The court finds that the plaintiff also has alleged sufficient facts to allow him to proceed on an Eighth Amendment deliberate indifference claim against Rasmussen, Umentum, Schalk, Sabish and Halper.

The plaintiff's complaint, however, does not mention defendant Greff or an Unknown Training Captain. Under the law, §1983 defendants are responsible "for their own misdeeds but not for anyone else's." Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009). Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional violation." Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996), quoting the "long-settled" rule stated in Sheik-Abdi v. McClellan, 37 F.3d 1240, 1248 (7th Cir. 1994). Because the complaint does not allege that Greff or the

6

Unknown Training Captain were personally involved in the events of March 13, 2015, the court will dismiss those two individuals as defendants.

### III. PLAINTIFF'S MOTION TO APPOINT COUNSEL

On November 5, 2015, the court received a motion from the plaintiff, asking the court to appoint counsel to represent him. He argues in the motion that he is illiterate to the law, that he is an "MH-2" inmate (an inmate with a mental health designation), and that he has been a special education student all of his life. He provided evidence that he wrote to three lawyers asking them to represent him in this case, and asserts that he received only one response, from a law firm which declined to represent him.

In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person has to make a reasonable effort to hire private counsel on their own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). After the plaintiff makes that reasonable attempt to hire counsel, the court then must decide "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks, not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

7

Although the defendant has mental health and learning issues, he presented a clear and concise complaint detailing his claims against the defendants. Similarly, his motion to appoint counsel is clear and well-reasoned. In other words, the plaintiff has represented himself well thus far.

Most inmate plaintiffs ask the court to appoint lawyers to represent them. Most have no money. Most have no familiarity with the law. Many have mental health issues, learning disabilities, or limited educations. The court does not have the resources to appoint lawyers for every person who asks. Based on the plaintiff's ability to present his claims to the court in his pro se complaint and the clarity of his other communications, the court concludes that he is competent at this stage of the litigation to coherently present his case to the court. The plaintiff's claims relate to one incident that he witnessed and he will be able to present his version of events in an affidavit of declaration. The complexity of this case does not exceed the plaintiff's ability to present it. See Navejar, 718 F.3d at 696.

The court will serve the plaintiff's complaint on the Wisconsin Department of Justice, which will serve the defendants. The defendants then will answer, or otherwise respond to, the complaint, and the court will issue a scheduling order. Once the court issues the scheduling order, the plaintiff will need to conduct discovery by serving defendants' counsel with interrogatories and document requests, as described in Federal Rules of Civil Procedure 33 and 34. The plaintiff gathers information in support of his claims, some of which is his own personal knowledge of the events underlying his claims.

The defendants may file a motion for summary judgment. In response to that motion, the plaintiff will submit the evidence he has gathered, including his own affidavit or sworn declaration. See 28 U.S.C. § 1746. If, during any of these stages of the case, the plaintiff feels he needs the assistance of counsel, he may renew his request, and the court will consider the request in light of the progress of the case at that point.

## IV. CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed *in forma pauperis*. Dkt. No. 2. The court **ORDERS** the Secretary of the Wisconsin Department of Corrections or his designee to collect from the plaintiff's prison trust account the $349.90 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The Secretary shall clearly identify the payments by the case name and number.

The court **DISMISSES** the following defendants: Greff and Unknown Training Captain.

The court **ALLOWS** the plaintiff to proceed on Eighth Amendment failure to protect and deliberate indifference claims against the remaining defendants.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 8.

The court **ORDERS** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, the court will send electronic copies of plaintiff's complaint and this order to the Wisconsin Department of Justice for service on defendants CO Rasmussen, CO Umentum, Sgt. Schalk, Lt. Sabish and Dr. Halper.

The court **ORDERS** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, the defendants who are served shall file a responsive pleading to the complaint within **sixty (60) days** of receiving electronic notice of this order.

The court **ORDERS** that, pursuant to the Prisoner E-Filing Program, plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if at any point the plaintiff is no longer incarcerated at one of those institutions, he should submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

The court further advises plaintiff that if he does not timely file documents, the court may dismiss his case for failure to prosecute.

In addition, the parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will send copies of this order to the warden of the institution where the inmate is confined.

Dated in Milwaukee, Wisconsin this 10th of November, 2015.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge